STATE OF NEBRASKA, APPELLANT, V.
RENNE EDMUNDS, APPELLEE.

318 N.W.2d 859

Filed April 30, 1982. No. 43910.

Paul L. Douglas, Attorney General, and Ruth Anne E. Galter, and Kermit A. Brashear II, Special Assistant Attorney General, for appellant.

Larry W. Myers, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The issue before the District Court and before us is the constitutionality of Neb. Rev. Stat. § 60-1701 (Cum. Supp. 1980), the motor vehicle inspection statute.

The appellee, Renne Edmunds, was arrested on May 2, 1980, and charged with a violation of § 60-1701, failure to have a valid inspection certificate on a motor vehicle. The appellee filed a demurrer to the complaint, contending that § 60-1701 was unconstitutional and void because it violated article I, § 16, and article III, § 18, of the Constitution of the State of Nebraska and the fourteenth amendment of the U.S. Constitution. A hearing was held, arraignment was waived, and the appellee pled not guilty on May 29, 1980. On June 30, 1980, appellee's demurrer was overruled and trial was set for July 21, 1980. At trial, after the State presented its case, the appellee made a motion to dismiss on the same grounds set forth in his demurrer. The court overruled the appellee's motion to dismiss, found the appellee guilty, sentenced him to pay a fine of $10, and ordered him to pay the cost of prosecution. Edmunds

appealed the conviction to the District Court of Douglas County, Nebraska. The appeal was heard on September 22, 1980. The transcript of proceedings and testimony heard in the municipal court were received into evidence and the court took judicial notice of paragraph 1.18 of the rules and regulations issued by the Department of Motor Vehicles without objection by either the State or the appellee. On September 22, 1980, the District Court reversed the conviction and dismissed the action.

In its order dated September 22, 1980, the District Court held: "[T]he Court finds that Sec. 60-1701 R.R.S., Neb., 1943, as amended by the 1980 legislature is unconstitutional and void in that it contains classifications and exceptions which are unreasonable, arbitrary and unrelated to the public interest. Sec. 60-1701 R.R.S. Neb., 1943, as amended is therefore found to be in violation of Article III, Section 18 of the Constitution of the State of Nebraska."

The State was granted leave to docket error proceedings pursuant to Neb. Rev. Stat. § 29-2315.01 (Reissue 1979) on October 8, 1980. The State assigns as error the District Court's determination that, under the pleadings and the evidence, § 60-1701 was in violation of article III, § 18, of the Constitution of the State of Nebraska. The State also assigns as error the District Court's reversal of the appellee's conviction. The State contends that the exceptions and classifications contained in § 60-1701 are rationally based on actual differences in circumstances and, thus, are constitutionally permissible.

The original safety inspection statute was enacted in 1967 and provided in part: "Every motor vehicle and semitrailer as defined in section 60-301, except school buses subject to the provisions of section 79-488, shall be inspected once each year beginning in 1969 at official inspection stations at times established by the Department of Motor Vehicles and an official certificate of inspection and approval shall

be obtained for each such vehicle. . . . No person shall operate any motor vehicle or semitrailer without the required certificate of inspection and approval. No motor vehicle dealer licensed under the provisions of Chapter 60, article 14, shall sell at retail any motor vehicle or semitrailer until such motor vehicle or semitrailer has been inspected and an official certificate of inspection and approval attached." § 60-1701 (Reissue 1968).

The exceptions to the inspection statute were school buses, already subject to inspection on a more frequent than yearly basis, and those vehicles excluded from the definition of motor vehicle under Neb. Rev. Stat. § 60-301 (Reissue 1968).

Section 60-1701 was amended in 1969 Neb. Laws, ch. 520, § 1, p. 2132; 1969 Neb. Laws, ch. 521, § 1, p. 2133; 1973 Neb. Laws, L.B. 522, § 1; 1977 Neb. Laws, L.B. 472, § 1; 1980 Neb. Laws, L.B. 743, § 1; and 1980 Neb. Laws, L.B. 820, § 4. The latest amendments were effective April 24, 1980, and, thus, it is that act with which we are concerned in this case.

Section 60-1701 (Cum. Supp. 1980) provides in part: "Every motor vehicle, semitrailer weighing over five thousand pounds, trailer weighing over five thousand pounds, as defined in section 60-301, and school bus subject to the provisions of section 79-488, except motor vehicles and trailers registered pursuant to section 60-305.09, shall be inspected once each year beginning in 1969 at official inspection stations at times established by the Department of Motor Vehicles and an official certificate of inspection and approval shall be obtained for each such vehicle. . . . No person shall operate any motor vehicle, semitrailer, or school bus subject to the provisions of section 79-488, except implements of husbandry subject to section 60-333 and motor vehicles and trailers registered pursuant to section 60-305.09, without the required certificate of inspection and approval.

"The required certificate of inspection and ap-

proval for vehicles subject to the provisions of section 60-320, and owned by motor vehicle dealers subject to sections 60-1401 to 60-1435, shall consist of a certificate of inspection that shall be carried in the vehicle at all times as proof of such approval. Such certificate of inspection shall be valid for the same period as that provided in section 60-1703.

"No motor vehicle dealer licensed under the provisions of Chapter 60, article 14, shall sell at retail any motor vehicle, semitrailer weighing over five thousand pounds, or trailer weighing over five thousand pounds until such motor vehicle, semitrailer, or trailer has been inspected and an official certificate of inspection and approval attached; *Provided,* that if approval is denied and the purchaser agrees to make the necessary repairs and adjustments to meet the standards prescribed by the department, then the motor vehicle dealer shall issue to such purchaser a permit setting forth the time of purchase and delivery to the purchaser, the needed repairs and adjustments, and the signature of the purchaser agreeing to make such repairs and adjustments. The permit shall be in a form prepared by the department and attached to a conspicuous place on the motor vehicle or semitrailer. The motor vehicle dealer shall retain in his or her files a copy of such permit for a period of one year from the date of sale and the permit shall not be removed from such motor vehicle or semitrailer until it has been reinspected and meets the requirements prescribed by the department. Such motor vehicle or semitrailer shall not be operated on any public street or highway except to the place of repair or to the place of an official inspection station."

The definitions for motor vehicle, semitrailer, and trailer which were in effect at the time of arrest are found in § 60-301 (Supp. 1979). Noting, however, that this court does not decide moot cases, we will concern ourselves only with those sections of the stat-

utes which remain in the law as of the time of the writing of this opinion.

Section 60-301(1) (Supp. 1981) provides: "Motor vehicles shall include all vehicles propelled by any power other than muscular power, except mopeds, farm tractors, self-propelled equipment designed and used exclusively to carry and apply fertilizer, chemicals, or related products to agricultural soil and crops, and other implements of husbandry designed for and used primarily for tilling the soil and harvesting crops, vehicles which run only on rails or tracks, off-road designed vehicles, including but not limited to golf carts, go-carts, riding lawnmowers, garden tractors, all terrain vehicles, snowmobiles, and minibikes, and road and general purpose construction and maintenance machinery not designed or used primarily for the transportation of persons or property, including, but not limited to, ditch-digging apparatus, well-boring apparatus, asphalt spreaders, bucket loaders, leveling graders, earth-moving carryalls, power shovels, earthmoving equipment, crawler tractors, and self-propelled invalid chairs."

Paragraph 1.18 of the rules and regulations issued by the Department of Motor Vehicles provides in part: "Approval stickers are to be placed on the lower left hand corner of windshield. Approval stickers for dealer plated vehicles may be carried in the vehicle at all times, as proof of such approval, instead of attaching to vehicle."

The District Court found that § 60-1701 (Cum. Supp. 1980) violates article III, § 18, of the Constitution of the State of Nebraska, which provides in part: "The Legislature shall not pass local or special laws in any of the following cases, that is to say:

. . . .

"Granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever . . . ."

It is incumbent upon the Supreme Court, when reasonably possible and consistent with constitutional rights, to resolve all doubts as to the validity of a statute in favor of its constitutionality. If possible, a statute should be construed in such a way as to negate any constitutional infirmity. State laws are accorded a presumption of constitutionality. *Parker v. Roth,* 202 Neb. 850, 278 N.W.2d 106 (1979).

The power of classification rests with the Legislature and it will not be interfered with by the courts if real and substantial differences exist which afford a rational basis for classification. *State ex rel. Halloran v. Hawes,* 203 Neb. 405, 279 N.W.2d 96 (1979).

A statute must be general and uniform throughout the state, and must operate alike on all persons of a class with reference to relations and circumstances provided for. *Cleland v. Anderson,* 66 Neb. 252, 92 N.W. 306 (1902); *State Securities Co. v. Ley,* 177 Neb. 251, 128 N.W.2d 766 (1964).

The question then for this court to decide is whether there is some rational basis for the exceptions contained in § 60-1701 and whether these exceptions are in the public interest.

Section 60-301(1) defines motor vehicles. The statutory definition contains mainly exceptions. These exceptions do not appear to be based on the safety or inherent danger of the particular object. Rather, the exceptions contained in § 60-301(1) appear to have their basis on considerations not readily discernible, except for possibly the special interest of the owners of these vehicle classifications.

Mopeds are exempted from the definition of motor vehicles possibly since they are related more to a bicycle than a motorcycle. A moped weighs between 50 and 75 pounds more than a bicycle, can be operated at sustained distances at a speed of 30 miles per hour, has a motor, and the pedals, which are mechanically linked to the motor operation, can only be operated for short distances without exhausting

the operator. See Hearing, Committee on Public Works, L.B. 23 (January 17, 1979). The elimination of this class of vehicles from the safety inspection requirement is not justified by any significant reduction in danger to the operator or others by reason of faulty equipment as compared with other two-wheeled vehicles not exempted.

The farming industry receives special treatment in § 60-301(1). Tractors, self-propelled fertilizer and chemical carriers, and other implements of husbandry are all exempted from inspection under this statute. Obviously, self-propelled fertilizer carriers are not exempted because of their safe nature or difference of circumstance. It is true that they are not used for transportation of persons and are used primarily for the application of fertilizers and pesticides to fields, but the fact remains that they still use the roadways to get to the farm fields. The danger that one of these trucks imposes is significant. A truck that is not mechanically sound poses a greater danger than an automobile. A bad wheel on a truck carrying anhydrous ammonia would not only pose a serious threat to the driver but also to the occupants of any automobile that may collide with it and the general area in which a collision could possibly occur.

Section 60-1701 exempts semitrailers and trailers that weigh less than 5,000 pounds. The purpose of this exemption was to allow farm trailers carrying anhydrous ammonia and other equipment to be free from inspection. See Hearing, Committee on Public Works, L.B. 976 (April 30, 1969). Again, there is no rational basis for different treatment. These trailers have no significant quality about them which makes them inherently safer than a trailer over 5,000 pounds. The fact that they are used to apply chemicals to the soil is not enough. They are still required to be hauled on state roadways to get to the farm fields. We cannot discern a rational basis for

exempting these trailers other than to provide special economic advantage to fertilizer suppliers.

In reviewing § 60-1701 we can only find one exemption or exception to the statute which is rationally based on a substantial change in circumstance. Motor vehicles and trailers registered pursuant to Neb. Rev. Stat. § 60-305.09 (Cum. Supp. 1980) are exempted from inspection. The purpose of this exemption lies in the fact that these vehicles are required to meet stricter regulations on safety and maintenance under the Department of Transportation regulations. Unlike the previous exceptions discussed, these vehicles are required to meet other safety requirements which accomplish or exceed the same purposes and goals of § 60-1701.

Section 60-1701, as presently drafted, is so riddled with exceptions for special purposes and special interest groups that its effectiveness and goals are unobtainable. It is so permeated with exceptions that severance of the offensive portions of the statute would render it incomprehensible. The District Court's decision was correct. Section 60-1701 (Cum. Supp. 1980) contains classifications and exceptions which are unreasonable, arbitrary, and unrelated to the public interest. We therefore hold that § 60-1701 is unconstitutional and void in that it violates article III, § 18, of the Constitution of the State of Nebraska. The District Court's decision is affirmed.

AFFIRMED.

CLINTON, J., concurs in the result.