STATE OF NEBRASKA, APPELLEE, V. JOSEPH L. BURKE, APPELLANT.

408 N.W.2d 239

Filed June 12, 1987.    No. 86-809.

Donald B. Fiedler and Martin J. Kushner of Fiedler Law Offices, for appellant.

Robert M. Spire, Attorney General, and Marie C. Pawol, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Following a bench trial, defendant, Joseph L. Burke, was adjudged guilty of having violated Neb. Rev. Stat. § 28-1463.03(1) (Reissue 1985), a part of the Child Pornography Prevention Act as adopted by 1985 Neb. Laws, L.B. 668, and codified as Neb. Rev. Stat. §§ 28-1463.01 through 28-1463.05 (Reissue 1985), inclusive. Burke was

thereafter sentenced to serve a term of not less than 2 nor more than 5 years at the Nebraska Penal and Correctional Complex. He appeals and assigns as error the district court's determination that (1) the participants were under the age of 16, (2) the statute is constitutional, (3) the offense constitutes a Class III felony, and (4) he is not a mentally disordered sex offender. (Burke undertook to raise via a supplemental brief a claim that the sentence imposed is technically defective, but withdrew that claim when appearing for oral argument.) We affirm.

Gerald High, during the course of an investigation of his activities, informed the Lincoln Police Department that Burke owned a large library of pornographic material, some of which was child pornography. The Lincoln police passed the information along to the Omaha Police Division, which then undertook an investigation of Burke's activities. On November 12, 1985, High telephoned Burke from the Omaha Police Division and arranged a meeting at Burke's home. High brought Omaha Police Sgt. John Beers along, who posed as a friend of High.

High asked Burke to copy a videocassette tape which High had himself filmed at an earlier time. The High tape shows a number of nude males, at least one of whom is under 16 years of age, displaying their genitals, touching each other's unclothed genitals, and engaging in masturbation, oral-genital sex, and simulated anal-genital sex.

While the High tape was being copied, High asked Burke to play another videocassette tape for them to watch. Burke complied by playing a tape of a commercial 8-millimeter movie, "Cousin Bill," which had been filmed in 1975 and transferred to videocassette tape at an undisclosed time. This tape shows boys approximately 10 to 13 years old displaying their genitals, touching each other's unclothed genitals, and engaging in masturbation, oral-genital sex, and anal-genital sex. During the process of copying the High tape and watching "Cousin Bill," other officers who had been monitoring the conversation in the Burke home via a hidden microphone on Beers were summoned into the home, and Burke was arrested.

*New York v. Ferber,* 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed.

2d 1113 (1982), in upholding the constitutionality of a statute which prohibited persons from knowingly promoting sexual performances by children under age 16 by distributing material which depicts such performances, ruled that even nonobscene child pornography is entitled to no protection under the first amendment to the U.S. Constitution, provided the conduct to be prohibited is adequately defined by applicable state law, as written or authoritatively construed. In so holding, the U.S. Supreme Court recognized that states have a compelling interest in safeguarding the physical and psychological well-being of minors and that states are therefore entitled to great leeway in regulating pornographic depictions of children.

With the *Ferber* holding in mind, Judiciary Committee Hearing, L.B. 668, 89th Leg., 1st Sess. 112 (Mar. 5, 1985), our Legislature enacted § 28-1463.03(1), which provides: "It shall be unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers."

Some of the terms employed in the foregoing provision are defined in § 28-1463.02, which at the relevant time read:

As used in the Child Pornography Prevention Act, unless the context otherwise requires:

(1) Child shall mean any person under the age of sixteen years;

(2) Erotic fondling shall mean touching a person's clothed or unclothed genitals or pubic area, breasts if the person is a female, or developing breast area if the person is a female child, for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more persons involved. Erotic fondling shall not be construed to include physical contact, even if affectionate, which is not for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved;

(3) Erotic nudity shall mean the display of the human male or female genitals or pubic area, the human female breasts, or the developing breast area of the human female child, for the purpose of real or simulated overt sexual

gratification or sexual stimulation of one or more of the persons involved;

(4) Sadomasochistic abuse shall mean flagellation or torture by or upon a nude person or a person clad in undergarments, a mask, or bizarre costume, or the condition of being fettered, bound, or otherwise physically restrained when performed to predominantly appeal to the morbid interest;

(5) Sexually explicit conduct shall mean: (a) Real or simulated intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal between persons of the same or opposite sex or between a human and an animal or with an artificial genital [sic]; (b) real or simulated masturbation; (c) real or simulated sadomasochistic abuse; (d) erotic fondling; (e) erotic nudity; or (f) real or simulated defecation or urination for the purpose of sexual gratification or sexual stimulation of one or more of the persons involved; and

(6) Visual depiction shall mean live performance or photographic representation.

The first assignment of error, that the State failed to prove the age of those depicted in the tapes, is easily resolved. Although Burke assigns such claimed failure as error, he does not discuss the issue in his brief. Errors assigned but not discussed will generally not be considered by this court. *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 (1987); *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986); Neb. Ct. R. of Prac. 9D(1)d (rev. 1986).

While the foregoing rule makes any further consideration of the first assignment unnecessary, it should perhaps be noted that there was in fact no failure of proof concerning the ages of the participants depicted in the tapes. A police report received in evidence reflects that High described all the minors he filmed as being "between the ages of 13 and 16." If all the minors depicted in the High tape were between 13 and 16 years of age, at least one of them had to be under 16. While Burke objected to "those portions [of the report which] aren't relevant," the age of the depicted participants was relevant as a critical element of the State's burden of proof and thus not within the ambit of

Burke's objection. A defendant may not permit questionable or incompetent evidence to be admitted without objection, take the chance of a favorable result, and after an unfavorable outcome complain that the evidence was received. See *Vinciquerra v. State*, 127 Neb. 541, 256 N.W. 78 (1934). Similarly, Beers' report was received in evidence without objection and under a stipulation that if he were called as a witness, he would "probably mirror" his report. The Beers report describes the participants in "Cousin Bill" as "approximately 10 to 13 years of age." A party who has stipulated to the admission of evidence cannot on appeal complain about evidence admitted pursuant to and in accordance with the stipulation. *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987).

The trial court could properly consider the contents of those reports when looking at the tapes. This court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. Such matters are for the trier of fact, and the findings and conclusions of the trier of fact must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support those findings and conclusions. See, *State v. Brown, ante* p. 418, 405 N.W.2d 600 (1987); *State v. El-Tabech, ante* p. 395, 405 N.W.2d 585 (1987); *State v. Meints, ante* p. 335, 405 N.W.2d 15 (1987). While, as a later portion of this opinion demonstrates, the "Cousin Bill" tape alone is sufficient to support Burke's conviction, the evidence establishes that the High tape depicted at least one participant under 16 and that both the boys depicted in "Cousin Bill" were under 16.

In his argument regarding the second assignment of error, Burke contends the entire act is overbroad in violation of the 1st, 5th, 9th, and 14th amendments to the U.S. Constitution and is vague in violation of the due process clauses of the 5th and 14th amendments to the U.S. Constitution. He further maintains that the act offends the "analogous sections" of the Nebraska Constitution.

Our first task is to determine the scope of our analysis. Generally, this court will not consider a constitutional challenge in the absence of a specification of the constitutional provision

which is claimed to be violated. *State v. Meints*, 223 Neb. 199, 388 N.W.2d 813 (1986). Since Burke has not designated the provisions of the Nebraska Constitution he considers "analogous" to the 1st, 5th, 9th, and 14th amendments to the U.S. Constitution, our analysis must be limited to a consideration of the relevant provisions of the U.S. Constitution. Further, although Burke has said that the reach of the act is so broad that it offends the 1st, 5th, 9th, and 14th amendments to the U.S. Constitution, he has limited his overbreadth argument to the 1st amendment guarantee of free speech as applied to this State through the 14th amendment. Any overbreadth analysis which may be required must therefore be so limited as well. It is also significant that while Burke questions the constitutionality of the entire act, he was convicted only of a violation of § 28-1463.03(1). Since one who would receive no benefit from a declaration of invalidity does not have standing to challenge the constitutionality of a statute, *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986), we further limit our consideration as aforesaid to § 28-1463.03(1) and the statutory definitions of the terms used in that section.

Burke's overbreadth challenge, as applied to § 28-1463.03(1), is that the "portrayed observer" language of that section prohibits more than the visual depiction of child pornography, that it in fact prohibits, for example, a nonobscene portrayal of a nude youth under the age of 16 or a nonobscene portrayal of one under 16 looking at an adult nude, even if such portrayal was an important and necessary part of a literary performance or scientific or educational work.

Neither of the two films in the record involves the portrayal of a child as an observer. The first question to be answered, then, is whether Burke has standing to question the "portrayed observer" language as being unconstitutionally overbroad. The traditional rule is that one to whom a statute may be applied constitutionally does not have standing to challenge that statute on the ground that it conceivably may be applied unconstitutionally to others in situations not before the court. *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982); *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985). This traditional rule reflects both the personal nature of

constitutional rights and prudential limitations on constitutional adjudication. *New York v. Ferber, supra.* However, an exception to the traditional rule is made when a statute is overbroad. *New York v. Ferber, supra; State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987). In such a situation, one is allowed to assert the rights of others and attack the overbreadth of a statute even though the behavior of the person making the attack clearly may be unprotected and could be proscribed by a law drawn with the requisite narrow specificity. *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985); *Secretary of State of Md. v. J. H. Munson Co.*, 467 U.S. 947, 104 S. Ct. 2839, 81 L. Ed. 2d 786 (1984). This is so because persons whose noncommercial speech or expression is constitutionally protected may choose to refrain from exercising their rights for fear of criminal sanctions under a statute susceptible of application to protected behavior. *New York v. Ferber, supra.* However, where conduct and not merely noncommercial speech is involved, the overbreadth of the statute attacked must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Regan v. Time, Inc.*, 468 U.S. 641, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984); *New York v. Ferber, supra; Broadrick v. Oklahoma*, 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973).

Thus, determining whether Burke has standing to challenge the "portrayed observer" language on grounds of overbreadth is inextricably entwined with determining whether § 28-1463.03(1) reaches a substantial amount of speech or expression protected under the first amendment to the U.S. Constitution. See Monaghan, *Overbreadth*, 1981 Sup. Ct. Rev. 1, 3.

It therefore becomes necessary to determine whether the "portrayed observer" language impermissibly expands the application of § 28-1463.03(1), as Burke claims.

In affording a presumption of constitutionality to legislative enactments, *Illinois v. Krull*, ____ U.S. ____, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987), and *State v. Edmunds*, 211 Neb. 380, 318 N.W.2d 859 (1982), we, while construing penal statutes strictly, nonetheless give them a sensible construction in the

context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served, *State v. Hicks, ante* p. 322, 404 N.W.2d 923 (1987). Moreover, where a statute is susceptible of two constructions, under one of which the statute is valid while under the other of which the statute would be unconstitutional or of doubtful validity, that construction which results in validity is to be adopted. *State v. Evans*, 215 Neb. 433, 338 N.W.2d 788 (1983). As observed in *New York v. Ferber, supra*, a statute challenged as overbroad should be construed so as to avoid constitutional problems if it is subject to such a limiting construction. Unconstitutionality must be clearly established before this court is authorized to declare a statute void. *State v. Copple, supra.*

Application of the foregoing rules compels the conclusion that the "portrayed observer" language applies only to the visual depictions of persons under the age of 16 observing sexually explicit conduct as defined by § 28-1463.02. That being so, the questioned language does not reach the portrayals of children in nonpornographic settings; the phrase "portrayed observer" does not, therefore, render § 28-1463.03(1) overbroad under the first amendment to the U.S. Constitution.

Burke next claims that § 28-1463.03(1) is impermissibly vague because it does not specify when the visually depicted participants or observers must have been less than 16 years of age, nor who, in certain circumstances, must be sexually gratified or stimulated: those depicted; the makers, publishers, directors, creators, providers, or generators of the depiction; or the viewer.

With respect to this claim the traditional rule of standing applies; that is, one who has engaged in conduct which is clearly prohibited by the questioned statute cannot complain that the statute is vague when applied to the conduct of others. *New York v. Ferber, supra; State v. Copple, supra.*

There is no question but that to meet the due process requirements of the 5th and 14th amendments to the U.S. Constitution, a penal statute must be sufficiently clear so that a person of ordinary intelligence has fair notice of exactly what conduct is forbidden. *Kolender v. Lawson*, 461 U.S. 352, 103 S.

Ct. 1855, 75 L. Ed. 2d 903 (1983); *State v. Copple, supra.*

As noted in the foregoing overbreadth analysis, a penal statute is given a sensible construction in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

The suggestion that there is any doubt about when the visually depicted participants or observers must have been under the age of 16 is disingenuous, to say the least. The statute in question prohibits the "visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." Child was then defined in § 28-1463.02 as "any person under the age of sixteen years." Thus, § 28-1463.03(1) prohibited the visual depiction of sexually explicit conduct which has a child under the age of 16 as one of its participants or portrayed observers. In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning. *State v. Carlson,* 223 Neb. 874, 394 N.W.2d 669 (1986). The plain and ordinary meaning of the language used in § 28-1463.03(1) prohibited the depiction of one then under age 16 as a participant in or observer of sexually explicit conduct.

Burke's concern about who is to be sexually gratified or stimulated is also misplaced. Although, as the analysis of the third assignment of error demonstrates, the "Cousin Bill" tape alone supports the conviction, the fact is that both the High tape and "Cousin Bill" depict conduct which is clearly prohibited without regard to whether there existed sexual gratification or stimulation of anyone, namely, masturbation, oral-genital sex, and simulated anal-genital sex in the High tape and masturbation, oral-genital sex, and anal-genital sex in "Cousin Bill."

Accordingly, § 28-1463.03(1), as applied to Burke, is not impermissibly vague under the 1st and 14th amendments to the U.S. Constitution.

In his third assignment of error Burke argues the trial court should have determined that the offense was but a Class I misdemeanor rather than a Class III felony. The first fallacy in that position is that § 28-1463.04 specifies that a first time violation of any part of § 28-1463.03 constitutes a Class III

felony.

Nonetheless, Burke argues that as he had not provided any tape to anyone before he was arrested, his conduct was not complete, and he should therefore have been charged under a section of the act dealing with the possession of certain material with the intent to distribute it (§ 28-1463.05), violation of which then constituted but a Class I misdemeanor. The applicable rule, however, is that where a single act violates more than one statute, a prosecutor is free to prosecute under any statute he or she chooses, so long as the selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986); *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985).

The second fallacy in Burke's position is that his conviction does not rest upon whether he "provided" a tape to anyone. He played or showed the "Cousin Bill" tape and therefore "published" it in the sense that he disclosed its contents and made them generally known. Webster's Third New International Dictionary, Unabridged 1837 (1981). Burke's publication of the "Cousin Bill" tape constitutes a violation of § 28-1463.03(1). That being so, and since he was charged in but a single count which thus covered either the "Cousin Bill" tape or the High tape, we need not determine whether the copying of the High tape constituted the making, directing, creating, or generating contemplated by § 28-1463.03(1).

Finally, Burke assigns as error the district court's failure to deal with him as a mentally disordered sex offender. Burke correctly argues that a sentencing court has a mandatory duty under Neb. Rev. Stat. § 29-2912 (Reissue 1985) to order an evaluation of one convicted of a felony sexual offense for the purpose of determining whether he or she is a mentally disordered sex offender. *State v. Klappal*, 218 Neb. 374, 355 N.W.2d 221 (1984). A mentally disordered sex offender is one who, because of a mental disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to others. Neb. Rev. Stat. § 29-2911(2) (Reissue 1985). If such person is found to be a treatable mentally disordered sex offender and if treatment is

available in the state, then such person shall be committed for treatment, as well as sentenced in accordance with law. Neb. Rev. Stat. § 29-2915 (Reissue 1985). A sexual offense for these purposes includes any felony in which the sexual excitement of the offender is a motivational factor. *State v. Klappal, supra*; § 29-2911.

The insurmountable obstacle to a consideration of this assignment is that while the record tells us the trial court took evidence on and overruled Burke's motion that he be determined to be a mentally disordered sex offender, the bill of exceptions does not contain the evidence submitted at that hearing. An assignment of error requiring an examination of the evidence cannot prevail on appeal in the absence of a proper bill of exceptions. *State v. Dittrich*, 223 Neb. 461, 390 N.W.2d 527 (1986); Neb. Ct. R. of Prac. 5A(2) (rev. 1986).

Burke's suggestion that he could not have been found guilty without an implicit finding that he was sexually excited in the process of the conduct for which he was charged is spurious. Our analysis of Burke's ill-fated vagueness claim establishes that sexual excitement is not an element or substantial motivational factor of some of the conduct proscribed by § 28-1463.03(1).

Since the record fails to sustain any of Burke's assignments of error, the judgment of the district court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in the result.

The majority opinion in the instant case finds as support for its holding the decision of *New York v. Ferber*, 458 U.S. 747, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982). I, too, find comfort in *Ferber*. I write separately, however, because my comfort comes in the concurrence filed by Justice Stevens, in which he points out that while the specific conduct that gave rise to the criminal prosecution is not protected by the federal Constitution, the state statute that Burke is charged with violating does prohibit some conduct that is protected by the first amendment. Little purpose would be served for me to plagiarize the concurrence of Justice Stevens. Suffice it then to say that I adopt the views expressed by Justice Stevens in his concurrence in *New York v. Ferber*, as though it had direct

application to the facts in this case. The facts in *Ferber* are almost identical with the facts herein, and Justice Stevens' concurrence in *Ferber* could be filed herein and it would make perfectly good sense. As did Justice Stevens in *Ferber*, I will await the appropriate case to concern myself about what aspects of the first amendment to the U.S. Constitution Neb. Rev. Stat. §§ 28-1463.01 through 28-1463.05 (Reissue 1985) violate. What is clear is that in the instant case there was no first amendment violation.