STATE of South Dakota, Plaintiff
and Appellee,

v.

Gary ASHLEY, Defendant
and Appellant.

No. 16944.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1990.

Decided Aug. 1, 1990.

Rehearing Denied Sept. 7, 1990.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Steven R. Smith of Andera, Rabuck & Smith, Chamberlain, for defendant and appellant.

WUEST, Chief Justice.

Gary Ashley (Ashley), appeals from a judgment of conviction for Third Degree Burglary. We affirm.

On May 5, 1989, at approximately 7:30 in the morning, Lester Plank (Plank), Deputy Sheriff for Lyman County, received a telephone call from the Chamberlain Police Department advising him a burglary had been committed at the Farmer's Union Oil Company in Reliance, South Dakota. Plank arrived at the scene of the burglary shortly thereafter. He discovered a window on the south side of the Farmer's Union Oil Company building had been broken out. He also discovered a string of black leather which had been caught on the broken glass of this window. Plank subsequently searched the building and found several cash drawers had been pried open. His investigation revealed approximately eighty-five hundred dollars ($8500) in cash had been stolen from the building. Also missing was a Novar security system.

On the very same day this burglary had been reported to the police, Bill Hamilton (Hamilton), a parole agent, contacted the Mitchell Police Department and requested their assistance in finding Ashley. Hamilton was the supervising parole agent of Ashley. He had been attempting to contact Ashley at his home for several days but was unsuccessful. Hamilton was informed by the police he would be contacted immediately if the police ascertained the whereabouts of Ashley. The record also reveals about this time, Hamilton was informed by the police they suspected Ashley was involved in stealing guns in neighboring counties.

Five days later Hamilton was contacted by the Mitchell Police Dispatcher at approximately 5:00 a.m. and advised Ashley's vehicle had been seen parked outside Ashley's apartment. Upon receiving this information, Hamilton asked if a police officer would accompany him to Ashley's apartment as he wanted to verify that Ashley was complying with the terms of his parole. Pursuant to this request, Detective Mark McCray (McCray) agreed to accompany Hamilton to Ashley's residence.

At approximately 6:00 a.m., Hamilton and McCray arrived at Ashley's residence. Upon meeting Ashley, Hamilton inquired as to whether he could conduct a search of Ashley's apartment. Ashley responded, "Go ahead." Hamilton then began to search Ashley's apartment. McCray, though present, did not conduct any part of the search. During his search, Hamilton found two money wrappers in a cupboard located on the east wall of Ashley's apartment. The wrappers were marked "1000." The initials "R.A." were written on one wrapper along with the date April 28, 1989. The same initials were written on the other wrapper along with the date May 1, 1989. Hamilton found it strange that Ashley would have these money wrappers since he was unemployed at the time. As a result, Hamilton gave the wrappers to McCray who placed them in a bag and tagged them for identification. When asked what he was doing with the wrappers, Ashley said his wife must have brought them home from work.

After searching Ashley's apartment, Hamilton conducted a search of Ashley's automobile. Through this search, Hamilton discovered a black leather coat. He found a stun gun in the pocket of this coat. According to the terms of Ashley's parole, Ashley was prohibited from possessing guns or dangerous weapons. Considering this, Hamilton placed the black coat on the boulevard next to the automobile. McCray then noticed this coat, and particularly the black leather strings that hung from the sleeves of this coat. Knowing that a black leather string was found in the broken window at the Farmer's Union Oil Company, McCray suggested that Hamilton seize the coat. Hamilton did so. Shortly thereafter, Hamilton concluded his search.

After the search, the evidence found at Ashley's apartment was evaluated. The State Crime Laboratory examined Ashley's black leather coat and the black leather string found at the scene of the crime. Doctor Ilya Zeldes, who conducted this examination, concluded that due to the preponderance of matching characteristics and lack of discrepancies, the black leather string originated from the left sleeve cuff of Ashley's coat.

An investigation of the money wrappers revealed the initials contained on the wrappers were those of Rhonda Augspurger, an employee of the Tri–County State Bank in Chamberlain, South Dakota. Augspurger stated she wrote the dates on these wrappers (April 28, 1989 and May 1, 1989) and explained these dates represented when the wrappers and their contents were placed in the bank vault. Further investigation revealed these wrappers were similar to those which had been given to Connie Surat (Surat), a bookkeeper at the Farmer's Union Oil Company, on May 4, 1984. Surat stated she had gone to the Tri–County State Bank on May 4, 1989, to cash several checks. She returned to work that afternoon with approximately thirty-six hundred dollars ($3600) in cash.

On the basis of all this information, Ashley was subsequently charged with Third Degree Burglary in violation of SDCL 22–32–8. Ashley waived a jury trial on this matter and therefore a trial was scheduled to be held before the circuit court on November 29, 1989. Prior to trial, Ashley moved the trial court to suppress the coat seized at his apartment on the grounds it was seized in violation of his Fourth Amendment rights. The trial court held the seizure was proper and, as a result, Ashley's motion to suppress was denied.

A trial was held to the court. At the end of the State's case, Ashley moved for a judgment of acquittal. This was denied. After the trial was completed, Ashley was found guilty of Third Degree Burglary and a judgment of conviction was entered.

Ashley now appeals from this judgment alleging the trial court erred in two respects. First, he contends his black leather coat should not have been admitted into evidence because it was seized in violation of his Fourth Amendment rights. Secondly, he contends the trial court erred in finding the evidence was sufficient to sustain the charge of Third Degree Burglary and in denying his motion for judgment of acquittal.

We first address the issue of whether the trial court erred in refusing to suppress the admission of Ashley's black leather coat at trial. Initially, we note that as a condition of gaining parole, Ashley agreed to submit to search and seizure whenever reasonable cause was ascertained by his parole agent. This is embodied in Ashley's parole agreement which states:

> Search and Seizure: I will submit my person, property, place of residence, vehicle and personal effects to search and seizure at any time with or without a search warrant, whenever reasonable cause is ascertained by a parole agent.

Ashley does not dispute the validity of this provision.[1] Instead, he contends that, under these circumstances, the seizure of his coat violated his Fourth Amendment rights because the underlying search was merely a front or subterfuge for a police investigation. In essence Ashley contends that Hamilton was acting as an agent for the police when he conducted a search of his apartment and when he seized Ashley's coat. According to Ashley, the police did not have a right to search for and seize items from Ashley's apartment or vehicle under these circumstances. Therefore, Hamilton, acting as an agent for the police, clearly did not have that right either.

■ This Court, for the first time, is called on to determine whether a parole agent's warrantless search of a parolee's residence violated the parolee's Fourth

Amendment rights due to police participation in the search. While this issue has not been previously addressed by this Court, other courts have dealt extensively with this issue. On a number of occasions, the Ninth Circuit Court of Appeals has addressed this issue and has determined that a warrantless parole search runs afoul of the parolee's Fourth Amendment rights when the parole officer "acts as a 'stalking horse' to facilitate police investigations by circumventing the warrant requirement." *United States v. Jarrad,* 754 F.2d 1451, 1453 (9th Cir.1985), *cert. denied* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985); *see also Latta v. Fitzharris,* 521 F.2d 246, 247 (9th Cir.1975), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975). In elaborating on this principle, the Ninth Circuit Court of Appeals has stated:

> A parole officer is not a stalking horse if he, rather than the police, initiates the search in performance of his duties as a parole ... officer. When, on the other hand, a parole ... officer conducts a parole ... search on prior request of and in concert with law enforcement officials, the [parole] officer is in such a case acting, not as the supervising guardian, so to speak, of the parolee, but as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed.

*United States v. Richardson,* 849 F.2d 439, 441 (9th Cir.1988) *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988) (citations omitted). The aforementioned principles are based upon sound reasoning and are well established. Hence, we apply them to the facts in the present case to resolve the issue of whether the search and seizure in question violated Ashley's Fourth Amendment rights.

Applying the facts of this case to the aforementioned principles, it is clear that Hamilton was not acting as a "stalking

---

1. This Court has previously upheld these waiver provisions. In *State v. Cummings,* 262 N.W.2d 56 (S.D.1978), this Court declared the following condition of a suspended sentence was not violative of defendant's Fourth Amendment rights: [T]he Defendant waives his right to be free from search and seizure for a period of one year during which time any police officer ... may, with prior written oral consent of Defendant's Probation Officer, search the Defendant and his premises anytime of the day or night for gambling machines.

horse" or agent of the police when he searched Ashley's apartment and seized Ashley's coat. The record reflects that before Hamilton spoke to the police, he was concerned about Ashley's compliance with his parole conditions. Furthermore, it is undisputed Hamilton requested the police to accompany him on a search of Ashley's apartment. Although the police informed Hamilton, Ashley had returned to his apartment on the morning of May 10, 1989, the police did not suggest to Hamilton in any manner that he should conduct a search of Ashley's apartment. Additionally, we note that McCray specifically testified he was careful not to search for anything at Ashley's apartment and it was Hamilton who conducted the search. It is also significant that Hamilton, through his contact with the police, had learned Ashley had been suspected of participating in certain thefts. After McCray suggested he seize the coat, Hamilton may have properly concluded this coat may have been related to the thefts of which Ashley was suspected. Finally, we note that Hamilton seized the coat only upon the suggestion of McCray, he was not ordered to seize the coat.

All of these facts clearly support the conclusion Hamilton had initiated the search of Ashley's apartment in the performance of his duties as parole officer and he was not acting as a "stalking horse" or agent of the police when he searched Ashley's apartment and seized Ashley's coat. Therefore, we conclude the seizure of Ashley's coat did not violate Ashley's Fourth Amendment rights. Hence, the trial court did not err in admitting this coat into evidence.

Our conclusion as to this issue is supported by the Ninth Circuit Court of Appeal's decision in *Jarrad, supra.* The facts in *Jarrad* are much similar to those in the present case, except in *Jarrad* the law enforcement officials conducted the search of the parolee's apartment. Specifically, the facts in *Jarrad* reveal that a parole agent had been made aware one of his subjects was suspected of participating in a bank robbery. This agent later asked certain detectives to accompany him on a search of the parolee's apartment. The detectives agreed, and they later searched the parolee's residence while the parole agent merely was present. Shotgun shells were seized during the search and these shells were later linked to a shotgun used in one of the bank robberies. The Court in *Jarrad* held the district court did not err in admitting the shotgun shells into evidence as the search and seizure was not conducted in violation of appellant's Fourth Amendment rights. It reasoned that the search was initiated by the parole officer in the performance of his duties and thus, contrary to the appellant's contention, the parole officer was not acting as a "stalking horse" or agent of the police. *Id.* at 1454. For the same reasons the shotgun shells were held to be properly admitted in *Jarrad,* we hold that Ashley's coat was properly admitted in the present case. Hamilton not only initiated the search, but he conducted it as well. Hence, we find no error as to this issue.

■ Ashley's final argument concerns whether there is sufficient evidence in the present case to support a finding of guilty beyond a reasonable doubt. Ashley contends the evidence presented at trial was insufficient to support such a finding, and therefore, the trial court should have granted his motion for judgment of acquittal offered at the end of the State's case. We disagree.

It is well settled in this jurisdiction that a motion for judgment of acquittal is properly denied if the State has introduced evidence which, if believed by the trier of fact, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Halverson,* 394 N.W.2d 886, 887 (S.D.1986); *State v. Wellner,* 318 N.W.2d 324, 332 (S.D.1982). The evidence presented against Ashley here is circumstantial. This Court has previously stated:

> [W]here circumstantial evidence alone is relied on as to any one or more of the essential elements, the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convinc-

ing as to exclude a reasonable doubt that defendant was guilty of the offense charged.

*State v. Best*, 89 S.D. 227, 245, 232 N.W.2d 447, 457 (S.D.1975). We have also stated that "to support a conviction on circumstantial evidence, it is not necessary to exclude every hypothesis of innocence." *State v. Robb*, 303 N.W.2d 368, 371 (S.D. 1981); *State v. Schafer*, 297 N.W.2d 473, 477 (S.D.1980).

Upon review of the record in this case, we are satisfied that the evidence presented in this case is entirely consistent with Ashley's guilt and wholly inconsistent with any rational hypothesis of his innocence. The record reflects Ashley could not be found by his parole officer during the time the burglary was committed. Pursuant to his parole agreement, Ashley was to contact Hamilton if he was going to be absent from his home in Mitchell for an extended period of time. Ashley never did so here. Further, two money wrappers were discovered in Ashley's apartment. These wrappers contained the number "1000," indicating the wrappers once contained $1000.00. Ashley's possession of these wrappers is clearly unusual since he was unemployed at the time of the search. Ashley presented absolutely no evidence explaining his possession of these wrappers. On cross examination of Hamilton, it was revealed that Ashley told Hamilton that his wife must have brought the wrappers home from work. Ashley's explanation, however, is contrary to the testimony of Hamilton who testified Ashley's wife had moved out of Ashley's residence during the early part of May. Further, Hamilton testified he visited Ashley's residence a number of times prior to May 5, 1989, but no one was at this residence. Therefore, it is highly unlikely Ashley's wife brought the wrappers home from work, since it is clear one of the wrappers did not leave the Tri–County Bank vault until after May 1, 1989, while

the other did not leave this bank until after April 28, 1989.

Consistent with Ashley's guilt is the fact that Surat, an employee of the Farmer's Union Oil Company, went to the Tri–County State Bank on May 4, 1989, to get cash. She was given cash at this time, according to her testimony, and this cash was in wrappers similar to those found in Ashley's apartment. Also consistent with Ashley's guilt was the fact that a black leather string was found in the window where the burglar gained entrance into the Farmer's Union Oil Company building. An expert from the State Crime Laboratory examined this piece of leather and compared it to the black leather strings on Ashley's coat.[2] His examination revealed that a black leather string had been pulled off of Ashley's coat, and the black leather string found at the scene of the crime matched the length of the other strings on the coat when placed where the missing string was pulled off. Further, the expert's report on this examination indicated a lack of discrepancies between the leather string found at the scene of the crime and the leather on Ashley's coat.

Ashley's possession of the money wrappers in question associates him with the cash stolen from the Farmer's Union Oil Company. Ashley's black leather coat and the black leather string found at the burglarized building associate him with the scene of the crime. These factors, considered in light of all the other evidence, are consistent with Ashley's guilt. Although every hypothesis of innocence may not have been excluded at trial, this is not the test. The evidence here is sufficiently convincing so as to exclude a reasonable doubt that Ashley was guilty of Third Degree Burglary.

When a trial is held to the court, this Court must give due deference to the trial judge as the ultimate trier of fact to weigh the evidence and determine the credibility of the witnesses. *State v. Macy*, 294 N.W.2d 435, 436 (S.D.1980). Giving this

2. On appeal Ashley complains about the foundation for the expert's findings. This expert set out his finding regarding this examination in a report. Ashley stipulated to the admission of this report. Therefore, Ashley cannot, on appeal, complain about this evidence admitted pursuant to and in accordance with the stipulation. *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239, 244 (1987).

deference to the trial judge in the present case, we cannot conclude it erred in finding Ashley guilty of Third Degree Burglary.

Judgment affirmed.

MORGAN, HENDERSON and MILLER, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

I write specially to point out that if this search and seizure depended upon the parole agent's ascertainment of *reasonable cause*, it would fail completely. "Reasonable cause" and "probable cause" are comparable terms, *see* Black's Law Dictionary 1081 (5th ed.1979), and wholly lacking here. However, Ashley consented to this search and the discovery of the two money wrappers provided reasonable cause to search the automobile. Therefore, the extended discussion concerning the "stalking horse" is unnecessary. *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854, 858 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent").