STATE OF NEBRASKA, APPELLEE, V. ELMER L. LOSCHEN,
APPELLANT.
376 N.W.2d 792

Filed November 22, 1985.   Nos. 85-139, 85-141, 85-146, 85-182.

Richard Scott, for appellant.

Robert M. Spire, Attorney General, and Dale D. Brodkey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

These four consolidated cases arise from the nolo contendere pleas of defendant, Elmer L. Loschen, to four separate charges of theft by deception, each in a different county. He was thereupon adjudged guilty in each instance and thereafter sentenced to imprisonment for a term of not less than 20 months nor more than 5 years on each offense, the sentences to be served consecutively. The issues raised by defendant's assignments of error are (1) whether his prosecution for theft by deception was legal, claiming that another criminal statute

better fits his conduct; (2) whether there was a lack of a factual basis upon which to accept his nolo contendere pleas; and (3) whether his sentence is either (a) cruel and unusual or (b) excessive. We affirm.

Defendant had been a grain buyer for approximately 9 years, hauling the grain he purchased in his own trucks. He was bonded for $32,000. When defendant's bank, in January of 1984, refused to extend any further credit, defendant became unable to pay for the grain he had purchased from various farmers and then sold.

As a consequence, defendant was initially charged separately in Kearney, Adams, Clay, and Franklin Counties with one count of theft by deception, a Class III felony, since the value of the grain in each case was alleged to be greater than $1,000. As a Class III felony, each charge authorized imprisonment for a period of not less than 1 nor more than 20 years or a fine of not more than $25,000, or both a fine and imprisonment. In addition, defendant was also charged in Franklin County with a second count of theft by deception and with other counts of failure to license and bond vehicles and with nonpayment of grain purchases, as required of a grain buyer.

Pursuant to a plea bargain, defendant, on November 26, 1984, pled nolo contendere to a charge of theft by deception, reduced to a Class IV felony, in each of the four cases. As a Class IV felony, each charge authorized imprisonment for a period of 0 to 5 years or a fine of not more than $10,000, or both. All other charges against defendant were dismissed, as were two separate theft charges and a charge of aiding and abetting in the commission of a felony brought against defendant's wife.

The various presentence reports show that defendant's grain deals with Michael Thom furnished the basis for the Kearney County conviction (No. 85-139). Defendant purchased 20,000 bushels of corn from this victim in October 1983, but payment, which was due on March 1 and June 1, 1984, was never made, leaving Thom with a $71,000 loss. Defendant had also told Thom that he was bonded for $1 million and that he was able to pay more for the grain because he was shipping it directly to the west coast. Like the other victims, Thom's attempts to contact

defendant and receive payment failed.

The Adams County case (No. 85-141) arose from defendant's agreement to pay $64,000 by February 1, 1984, for 20,000 bushels of corn sold by Dick Burr in the middle of January 1984. No payment was ever made.

The Clay County case (No. 85-146) involved defendant's business dealings with Leroy Thom, in which defendant told Thom he was bonded for $1 million and that the reason he could offer a higher price was because he was dealing directly with grain buyers in Kansas City and Los Angeles. Local elevators were said to be used only for storage. Thom's loss is approximately $584,000.

As to the Franklin County case (No. 85-182), defendant approached his cousin, Dale Loschen, in January 1984 about selling him corn, which the cousin did on February 23. Defendant assured his cousin that he was bonded for $1 million but that it would take 3 months before he could make payment, since he was shipping the corn to the west coast to sell, this being the reason he could offer a higher price than the local elevators. In fact, defendant sold the corn to an area elevator, receiving payment the same day. The value of the corn the defendant took from his cousin is $72,724.31.

The record reveals that in addition to these four cases defendant did not pay for grain he acquired from various other persons. One such individual alone lost over $264,000, and the total amount lost by the various victims is estimated to be approximately $3 million.

Defendant first argues that Neb. Rev. Stat. § 88-513 (Supp. 1985) more accurately describes his conduct than does the statute under which he was charged, Neb. Rev. Stat. § 28-512 (Reissue 1979), and, thus, he could not be prosecuted under the latter statute.

At the relevant time, § 88-513 (Reissue 1981) provided:

> No officer or agent of any state-licensed grain warehouse shall issue a receipt for grain not actually received. If at any time there is less grain in a warehouse than outstanding receipts issued for such grain, there shall be a presumption that the officers of such warehouse have wrongfully removed or caused to be removed grain or

issued receipts for grain not actually received and in violation of this section. Any officer or agent who shall violate the provisions of this section shall be guilty of a Class I misdemeanor.

As a Class I misdemeanor, this crime authorized imprisonment of 0 to 1 year or a $1,000 fine, or both a fine and imprisonment. (Effective June 5, 1985, violation of this statute constitutes a Class IV felony.)

The statute under which defendant was prosecuted, § 28-512, provided, as it does now:

A person commits theft if he obtains property of another by deception. A person deceives if he intentionally:

(1) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; or

(2) Prevents another from acquiring information which would affect his judgment of a transaction; or

(3) Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship; . . . .

We need not, however, concern ourselves with determining whether § 88-513 applies to defendant's conduct at all. For even if it does apply and, as argued by the defendant, does in fact better describe defendant's conduct than § 28-512, the county attorney was not limited to prosecuting under the former statute.

Where a single act violates more than one statute, a prosecutor is free to prosecute under any statute he chooses, so long as the selection is not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); *State v. Miller*, 216 Neb. 72, 341 N.W.2d 915 (1983); *State v. White*, 209 Neb. 218, 306 N.W.2d 906 (1981).

The first issue, then, must be resolved against defendant.

Defendant next urges that there was no factual basis for his nolo contendere pleas, as his intent to deceive was not shown.

A factual basis for a plea of nolo contendere may be established by examination of the presentence report. *State v. Richter*, 220 Neb. 551, 371 N.W.2d 125 (1985).

As noted earlier, the presentence reports dealing with the Kearney, Clay, and Franklin Counties cases clearly establish that defendant deliberately created in his victims a false impression by telling them he was bonded for substantially more than he actually was, and by telling them the grain was being shipped directly to buyers removed from the immediate area when in fact he was selling it locally.

The presentence report with respect to the Adams County case provides only the information that payment was not made when and as promised. Nonetheless, we cannot say that a factual basis for the plea does not exist because the bill of exceptions does not include the proceedings had at the hearing at which the plea was entered and accepted. As said in *State v. Richter, supra* at 552, 371 N.W.2d at 127:

> When an assertion is made that a plea of guilty was involuntarily made, one of the propositions that may be inherent in that claim is that some, if not all, of the defendant's constitutional rights were either not explained to or waived by the defendant. As the defendant chose not to include the entire proceedings, i.e., the initial arraignment, in the bill of exceptions, we do not consider any deficiency that may have existed in the court's explanation of the defendant's constitutional rights.

Similarly, absent a bill of exceptions of the relevant proceeding, we do not consider an assertion that a factual basis for the plea does not exist. "Any assignment of error which requires an examination of the evidence cannot prevail on appeal in the absence of a bill of exceptions." *State v. Behrens*, 204 Neb. 785, 788, 285 N.W.2d 513, 515 (1979); *State v. Harris*, 205 Neb. 844, 290 N.W.2d 645 (1980).

Thus, the second issue must also be resolved against defendant, bringing us to the third and final issue, whether the sentences are cruel and unusual or, in any event, excessive.

Defendant first claims the sentences are disproportionate to the crime and therefore cruel and unusual, in violation of the eighth amendment to the U.S. Constitution and article I, §§ 9 and 15, of the Nebraska Constitution.

The factors to be considered in making that assessment have recently been reiterated in *State v. Stratton*, 220 Neb. 854, 374 N.W.2d 31 (1985), as being (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. Accord, *State v. Brand*, 219 Neb. 402, 363 N.W.2d 516 (1985); *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983).

As stated in *State v. Leadinghorse*, 192 Neb. 485, 487, 222 N.W.2d 573, 576 (1974), "[r]egardless of its severity, a sentence of imprisonment which is within the limits of a valid statute ordinarily is not a cruel and unusual punishment in the constitutional sense."

There is no claim that the range of penalties prescribed by § 28-512 are, in and of themselves, unconstitutional, only that the sentences imposed upon defendant within that range are such. Yet, the record contains no evidence from which such a conclusion can be reached. Neither has any case been cited, nor found by independent research, which holds that four consecutive prison terms of not less than 20 months nor more than 5 years for deceiving four persons out of a total of over $790,000 by misrepresenting one's grain-buying operations are unconstitutionally disproportionate to the crimes. The penalties are not cruel and unusual.

The second attack on the sentences is that they are, in any event, excessive.

In this connection it must be borne in mind that the prosecutor permitted the defendant to plead guilty to thefts involving values of not over $1,000 when the evidence clearly supported thefts involving values of over $1,000. The difference, as noted earlier, is that the former constitute Class IV felonies whereas the latter constitute Class III felonies, and thus reduce the maximum period of imprisonment by 15 years on each charge.

True, defendant is a 52-year-old married man with no prior criminal record other than numerous traffic offenses, but the fact still remains that defendant relieved his victims of the product of their labors by deceiving them. The record indicates that the trial court carefully considered the sentences it imposed and the factors operating against probation, including that defendant should have contemplated the effect upon his victims and that there were no substantial grounds tending to justify the crime. Neb. Rev. Stat. § 29-2260 (Cum. Supp. 1984).

It is a firmly established rule of this jurisdiction that in the absence of an abuse of discretion, a sentence imposed within statutory limits, including the denial of probation, will not be disturbed on appeal. *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985); *State v. Wood*, 220 Neb. 388, 370 N.W.2d 133 (1985). See, also, *State v. Ellefson*, 214 Neb. 747, 336 N.W.2d 88 (1983) (holding that absent an abuse of discretion, consecutive sentences will not be disturbed).

The sentences imposed, though the maximum permitted, cannot be said to be legally excessive nor to constitute an abuse of discretion.

Since the record resolves the issues raised by defendant's assignments of error against him, the judgments and sentences are each affirmed.

AFFIRMED.