IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. OWENS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

JAMES L. OWENS, APPELLANT.


Filed August 2, 2016.    No. A-15-1109.


Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed as modified.

Jonathan R. Brandt, of Anderson, Klein, Brewster & Brandt, for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.


MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

INTRODUCTION

James L. Owens appeals from his plea-based conviction in the district court for Buffalo County of attempted first degree sexual assault. The court sentenced Owens to 7 to 15 years' imprisonment. On appeal, Owens challenges his sentence as excessive and the court's inclusion in the sentencing order of certain findings about the sexual assault to which Owens pled. We affirm the sentence as modified.

BACKGROUND

On December 15, 2014, the State filed an information in the district court, charging Owens with first degree sexual assault in violation of Neb. Rev. Stat. § 28-319 (Reissue 2008), a Class II felony. The State alleged that on October 29, 2014, Owens subjected S.M. to sexual penetration without her consent or knew or should have known that S.M. was mentally or physically incapable

of resisting or appraising the nature of his conduct. The State subsequently filed an amended information, adding a habitual criminal charge.

On August 10, 2015, a plea hearing was held before the district court. At the hearing, Owens' attorney informed the court that in exchange for Owens' plea of no contest, the State filed a second amended information, charging Owens with attempted first degree sexual assault pursuant to Neb. Rev. Stat. § 28-201 (Cum. Supp. 2014) and § 28-319, a Class III felony, and dismissed the habitual criminal charge. Owens affirmed that the plea agreement was as described by his attorney. He also informed the court that he did not need additional time to discuss the plea with his attorney and that he was satisfied with his attorney's advice and representation. Owens waived the 24-hour waiting period after service and was arraigned on and entered a plea of no contest to the charge set forth in the second amended information. The court informed Owens of his Constitutional rights and the consequences of pleading, including that he would be required to register as a sex offender. He was also advised of the possible penalties that could be imposed. Owens stated that no one had threatened, pressured, or forced him to enter the plea against his will; that no promises, other than the change of the charge against him and the dismissal of the habitual criminal charge, had been made to get him to enter his plea; and that he understood his Constitutional rights, the consequences of his plea, and the possible penalties.

The factual basis provided by the State indicates S.M.'s report that on the night of October 29, 2014 or during the early morning hours of October 30, she had been sexually assaulted by two male individuals at a particular address in Kearney, Nebraska. Owens' residence is located at that address. S.M. reported that she met the two individuals at a bar that evening and that she left the bar with them. S.M. knew the first individual, who was later identified as Edward Burton, "from her previous social relationship." S.M. identified the second individual, Owens, from a photo lineup.

The men and S.M., who had previously been drinking alcohol, went to Owens' residence where they consumed some marijuana. S.M. reported that Burton "blew the marijuana" into her face. S.M. then became physically ill and tried to leave the residence, but she fell onto the floor. During that time, Burton sexually assaulted S.M. At that point in the recitation of the factual basis, the prosecutor explained that a jury had already convicted Burton in a separate case. S.M. reported that after the assault by Burton, the two men carried her by her hands and feet into another room in the house, which she described as "a child's room." S.M. was "in and out of consciousness," but she did tell the men "no" and "don't." At some point, S.M. woke up and realized that Owens was having sexual intercourse with her by inserting his penis into her vagina. Owens did so without S.M.'s consent or when S.M. was physically unable to give consent. S.M. was able to leave the residence the next morning, after which she reported the sexual assault to law enforcement.

The district court asked whether the defense wanted to be heard with regard to the factual basis, and Owens' attorney stated, "I believe my client would contest the facts as alleged, but I would agree . . . that's the evidence that's obtained [sic] within the State's file, and it could lead to conviction. And he would stand by his statement of no contest regarding that." The district then accepted Owens' plea and found him guilty beyond a reasonable doubt. The court ordered a presentence investigation report (PSI), along with "a combination sex offender, psychological and substance abuse evaluation," and scheduled a sentencing hearing.

At the sentencing hearing, held on October 30, 2015, the district court informed the parties that it had reviewed the PSI and that it had received "character and support letters" for Owens provided by his attorney as well as a sex offender risk assessment and psychological evaluation (both of which were included in the PSI). The court heard argument from the parties' attorneys and gave Owens an opportunity to speak as well. During Owens' comments, he stated, "And the facts that [the prosecutor] stated are not true. I did not have sex with this woman. I just tried to be a good person and stop the embarrassment."

In sentencing Owens, the district court stated that it had reviewed the PSI in detail and had considered Owens' age, mentality, education, social and cultural background, significant past criminal record, and his record of law-abiding conduct. The court acknowledged that many people, whose opinions were reflected in the letters of support, felt that Owens was "a nice guy who helps other people," and was someone who could "be something of an asset for the community." The court stated further, "Unfortunately, you are also a nice guy who is a rapist and who engaged in conduct together with Mr. Burton. That purely and simply has no excuse whatsoever, and frankly, from which your background and activities cannot really be considered in mitigation." The court acknowledged that Owens "now den[ied]" that he had "at least attempted first-degree sexual assault of the victim," but noted that the PSI indicated Owens "actually did complete" the first degree sexual assault "of a person who was clearly intoxicated and a person who had already been raped by [Owens'] companion and who [Owens] apparently decided to take advantage of, given her circumstances and condition." The court informed Owens that, despite Owens' "pronouncements to the contrary," Owens had pled to and been found guilty of attempted first degree sexual assault and that the court was unable to retry the facts of the case during the sentencing hearing.

The district court sentenced Owens to imprisonment for 7 to 15 years and gave him 87 days of credit for time served. The court also sentenced Owens in a separate but related case, in which Owens pled to an amended charge of attempted possession of a firearm by a prohibited person, and made the sentence in that case (1 to 3 years) consecutive to the sentence in this case. As it had done at the time of the plea hearing, the court advised Owens that a conviction for attempted sexual assault made him subject to the requirements of the Nebraska Sex Offender Registration Act (SORA), and that the Nebraska State Patrol would determine the duration of that obligation, but that Owens would likely be subject to the requirements of the SORA for the rest of his life. The court further stated, "It is also likely you will be subject to some kind of community based supervision for the rest of your natural life as well."

On October 30, 2015, the district court also entered a written sentencing order of the check-the-box and fill-in-the-blank variety. As relevant to the issues in this appeal, the order included a check mark and handwritten finding on page 3 of the order, apparently to justify Owens' registration under SORA. Specifically, there is a check mark appearing next to a preprinted paragraph, which states:

> The court finds evidence of the following in the record of trial, the presentence investigation, or other evidence of record indicating the occurrence of sexual penetration or sexual contact (as defined in *Neb. Rev. Stat.* §28-318) as will require registration under the Nebraska Sex Offender Registration Act.

This pre-printed paragraph is followed by three blank lines upon which a handwritten notation appears, stating "sexual contact and penetration without consent of the victim."

The sentencing order also includes a pre-printed statement on page 4, indicating "The Court notified the Defendant that he/she will be supervised [sic] to Lifetime Community Supervision (see attached notice)." The notice attached to the order is not a Lifetime Community Supervision notice form, but rather, a "NOTIFICATION OF REGISTRATION RESPONSIBILITIES UNDER NEBRASKA SEX OFFENDER REGISTRATION ACT" form, signed by Owens on the date of the sentencing hearing. Owens subsequently perfected his appeal to this court.

ASSIGNMENTS OF ERROR

Owens asserts that the district court erred in (1) imposing an excessive, illegal, and impermissible sentence and (2) finding he engaged in sexual contact and penetration without consent of the victim.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits unless the trial court abused its discretion. *State v. Duncan*, 291 Neb. 1003, 870 N.W.2d 422 (2016). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *State v. Berney*, 288 Neb. 377, 847 N.W.2d 732 (2014).

ANALYSIS

*Owens' Sentence Not Excessive.*

Owens asserts that the district court erred in imposing an excessive, illegal, and impermissible sentence.

Owens was convicted of attempted first degree sexual assault, a Class III felony. § 28-201; § 28-319; Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). The district court sentenced Owens to incarceration for a period 7 to 15 years with credit for 87 days served. Class III felonies are punishable by a maximum of 20 years' imprisonment, or a $25,000 fine, or both, with a minimum of one year imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). The sentence imposed by the district court is clearly within the statutory limits.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, an appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Jones*, 293 Neb. 452, 878 N.W.2d 379 (2016). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). The sentencing court is not limited to any mathematically applied set of factors. *State v. Duncan*, 293 Neb. 359, 878 N.W.2d 363 (2016). The appropriateness of a sentence is necessarily

a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The record reveals that the district court did not impose an excessive sentence or abuse its discretion in sentencing Owens. Owens takes issue with the court's assertion that he is a "nice guy who is a rapist" and who engaged in conduct "from which [Owens'] background and activities cannot really be considered in mitigation." When the court's comments are read in context and in their entirety, it is clear that the court, rather than disregarding the positive facts and circumstances surrounding Owens' life, determined that the positive facts and circumstances were outweighed by the negative facts and circumstances, including the severity of the crime and Owens' prior criminal history.

Owens' criminal history includes charges for issuing bad checks and theft by shoplifting, a conviction for driving under the influence of alcohol, and a conviction for possession of a controlled substance (for which he received probation, had his probation revoked, and was sentenced to 1 to 3 years in prison). He has also received a 1- to 3-year prison sentence for attempted distribution of a controlled substance. He has no prior arrests for sexual assault.

Owens completed a number of assessments, the results of which were included in the PSI. On the Level of Service/Case Management Inventory, Owens' score placed him at high risk to reoffend. On the Vermont Assessment of Sex Offender Risk, Owens scored in the moderate low risk range. On the Nebraska Substance Abuse Questionnaire, Owens scored in the problem risk range for antisocial; the medium risk range for alcohol, drugs, and stress coping; and the low risk range for truthfulness, violence, and aggressiveness. On the Simple Screening Instrument, Owens' score placed him in the moderate to high risk range for alcohol or drug abuse. Owens' "SRAF level," which is the probation officer's opinion of the likelihood that the defendant will reoffend, was considered high.

Owens briefly argues that his sentence violated the Eighth Amendment's proscription against cruel and unusual punishment in that it was grossly disproportionate. Regardless of its severity, a sentence of imprisonment which is within the limits of a valid statute ordinarily is not a cruel and unusual punishment in the constitutional sense. *State v. Loschen*, 221 Neb. 315, 376 N.W.2d 792 (1985).

The sentence imposed by the district court was neither excessive nor grossly disproportionate. The district court did not abuse its discretion in sentencing Owens. This assignment of error is without merit.

*Incorrect Findings in Sentencing Order.*

Owens asserts that the district court erred in finding he engaged in sexual contact and penetration without consent of the victim. The State agrees that this finding in the sentencing order, as well as the court's apparent determination that Owens was subject to lifetime community supervision, are erroneous. We agree that both of these findings are erroneous and modify the order to strike those provisions.

First, the preprinted language in the section of the order where the court made the handwritten finding of "sexual contact and penetration without consent of the victim" mirrors the language of Neb. Rev. Stat. § 29-4003(1)(b)(i)(B) (Cum. Supp. 2014), which addresses the

applicability of the SORA to certain listed crimes which are generally non-sexual in nature. Subsection 29-4003(l)(b)(i)(B) does not apply in this case because Owens' crime of attempted first degree sexual assault was automatically registrable pursuant to § 29-4003(1)(a)(i)(C) and (N). Accordingly, we modify page 3 of the sentencing order to strike the handwritten finding of "sexual contact and penetration without consent of the victim" and the corresponding check mark in that section of the order.

Second, the pre-printed material on the final page of the sentencing order includes a provision stating, "The Court notified the Defendant that he/she will be supervised [sic] to Lifetime Community Supervision (see attached notice)." In its brief on appeal, the State observes that it never sought lifetime community supervision in this case, that lifetime community supervision was not charged in the information or discussed at the plea hearing, and that it was not even mentioned until the court brought it up at the sentencing hearing.

The criteria for lifetime community supervision are set forth in Neb. Rev. Stat. § 83-174.03(1) (Reissue 2014), which provides:

> Any individual who, on or after July 14, 2006, (a) is convicted of or completes a term of incarceration for a registrable offense under section 29-4003 and has a previous conviction for a registrable offense under such section, (b) is convicted of sexual assault of a child in the first degree pursuant to section 28-319.01, or (c) is convicted of or completes a term of incarceration for an aggravated offense as defined in section 29-4001.01, shall, upon completion of his or her term of incarceration or release from civil commitment, be supervised in the community by the Office of Parole Administration for the remainder of his or her life.

For purposes of the SORA, aggravated offense means:

> [A]ny registrable offense under section 29-4003 which involves the penetration of, direct genital touching of, oral to anal contact with, or oral to genital contact with (a) a victim age thirteen years or older without the consent of the victim, (b) a victim under the age of thirteen years, or (c) a victim who the sex offender knew or should have known was mentally or physically incapable of resisting or appraising the nature of his or her conduct.

Neb. Rev. Stat. § 29-4001.01 (Cum. Supp. 2014).

The Nebraska Supreme Court has determined that in enacting § 83-174.03, the Legislature intended to establish an additional form of punishment for some sex offenders. *State v. Payan*, 277 Neb. 663, 765 N.W.2d 192 (2009). Where the facts necessary to establish an aggravated offense as defined by the SORA are not specifically included in the elements of the offense of which the defendant is convicted, such facts must be specifically found by the jury in order to impose lifetime community supervision under § 83-174.03 as a term of the sentence. *Id.*

The SORA also includes certain notice requirements with respect to the imposition of lifetime community supervision. Pursuant to Neb. Rev. Stat. § 29-4019(1) (Reissue 2008):

> When sentencing a person convicted of an offense which requires lifetime community supervision upon release pursuant to section 83-174.03, the sentencing court shall:

(a) Provide written notice to the defendant that he or she shall be subject to lifetime community supervision by the Office of Parole Administration upon release from incarceration or civil commitment . . . ;

(b) Require the defendant to read and sign a form stating that the duty of the defendant to comply with the conditions of community supervision and his or her rights to challenge the conditions of community supervision imposed by the office has been explained; and

(c) Retain a copy of the written notification signed by the defendant.

In the present case, none of the subsections of § 83-174.03(1) are applicable. Subsections (a) and (b) of § 83-174.03(1) are not applicable because while Owens was convicted of a registrable offense under § 29-4003, the record does not reveal a previous conviction for a registrable offense, and, he was not convicted of sexual assault of a child. Subsection 83-174.03(1)(c) is also inapplicable. Owens was convicted of attempted first degree sexual assault, a crime that does not specifically include the facts necessary to establish an aggravated offense in the elements of the offense. While Owens' actions in October 2014 with respect to S.M. may have fit the current definition of an aggravated offense, see § 29-4001.01, he was not charged with or convicted of an aggravated offense. Finally, even if Owens had been convicted of an aggravated offense, the provision in the sentencing order with respect to lifetime community supervision would still need to be stricken because Owens was not provided with the proper notice pursuant to § 29-4019. Owens was provided with and signed a sex offender registration notice form, but not a written notice form with respect to lifetime community supervision. Accordingly, we modify page 4 of the sentencing order to strike the pre-printed paragraph stating, "The Court notified the Defendant that he/she will be supervised [sic] to Lifetime Community Supervision (see attached notice)."

## CONCLUSION

The district court did not abuse its discretion in sentencing Owens. We modify the sentencing order to strike the specific provisions discussed above.

AFFIRMED AS MODIFIED.