IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BOYD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BRANDON L. BOYD, APPELLANT.

Filed December 3, 2019.    No. A-19-373.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Brandon L. Boyd appeals his plea-based convictions for first degree sexual assault, a Class II felony, and visual depiction of sexually explicit conduct, a Class ID felony. On appeal, he contends that the sentences imposed by the district court were excessive and that he received ineffective assistance of trial counsel. Upon our review, we affirm Boyd's convictions and sentences.

BACKGROUND

On July 5, 2018, the State filed an information charging Boyd with one count of first degree sexual assault, a Class II felony, and one count of strangulation, a Class IIIA felony. On November 30, Boyd and the State appeared before the district court. At that time the parties announced a plea agreement. The State filed an amended information charging Boyd again with one count of first

- 1 -

degree sexual assault. However, count II was amended to charge Boyd with visual depiction of sexually explicit conduct, a Class ID felony. Under the plea agreement, Boyd entered pleas of guilty to both charges. There was no agreement as to recommendation of sentence. The district court advised Boyd that first degree sexual assault carried a maximum possible penalty of 50 years in prison and that visual depiction of sexually explicit conduct required a mandatory minimum sentence of 3 years and a maximum term of 50 years in prison.

During the course of the plea hearing, Boyd informed the court that he understood what he was charged with and the possible penalties, including his obligation to register as a sex offender. After advisement, he informed the court that he understood his constitutional and statutory rights, and that pursuant to his guilty pleas he would be losing those rights with the exception of his right to counsel and his right to appeal. He affirmed that no one had made any promises or threats toward him which induced him to enter his pleas. He further affirmed that he had been provided enough time to speak to his attorney about the case, that he had informed his attorney of everything he knew about the case, and that he had discussed all possible defenses. He also affirmatively indicated that he was satisfied with the representation of counsel. When asked by the court whether he had any questions for his attorney or the court before proceeding, Boyd replied "Just leniency, ma'am."

The State then provided the following factual basis:

Judge, on May 7, 2018 a Project Harmony interview was conducted of the victim, A.T. She indicated that her stepfather--During that Project Harmony video, she indicated that her stepfather, the defendant, Brandon Boyd, had sexually assaulted her on multiple occasions, specifically during the period of October 1, 2016 through September 30,2017 at or near [address] in Sarpy County, Nebraska. Specifically, among other things, A.T. acknowledged that [Boyd] had penetrated her vaginally, anally and orally; that on one occasion she was on top of him and squatting over him and he was rubbing his penis on her vagina when he pulled her legs out from under her causing his penis to penetrate her vagina. She did not consent to that.

Thereafter, during other instances of sexual contact and penetration they were done as a result of her being punished for not doing her chores or falling asleep. She did not consent to those and was coerced or forced into participating in those acts of sexual contact and penetration.

Subsequently on June 6, 2008 [sic], a search warrant was served on the residence at [address]. During that search warrant the officers located a number of electronic items, including cell phones, tablets, computers, memory cards. A review of those cards indicated that they belonged to the defendant, Brandon Boyd, and that on one of those cards the officers observed a video and the video was of the victim, A.T., squatting over the defendant. You could see on the video that [Boyd], A.T. [sic], is rubbing her vagina area. A subsequent interview with A.T. she acknowledged that that was her and that the individual that she was squatting over was the defendant, Brandon Boyd, and that that video had taken place at the residence at [address]. She further indicated that during that video [Boyd] had told her to show him everything and to play with herself and [Boyd] further told her to act like she wanted it and enjoyed it and that that video depicted sexually

explicit conduct as defined under the statute 28-1463.03(1) and that all those events occurred in Sarpy County, Nebraska.

I would further note, Judge, for purposes of the factual basis, that [Boyd's] date of birth is 4/19/80, making him older than 19 years of age, and that the victim's date of birth, A.T.'s date of birth is . . . 2000 [making her 16 and 17 during the time of the alleged crimes]. . . . With respect to the visual depiction, A.T. indicated that the individual who was behind the camera making that video was actually the defendant, Brandon Boyd, at that time.

The district court found that the plea and waiver of rights were made knowingly, voluntarily, and intelligently, and that a sufficient factual basis existed to support the plea. The court found Boyd guilty of first degree sexual assault and visual depiction of sexually explicit conduct. A presentence report was ordered and a sentencing date was set.

The presentence report includes a detailed rendition of A.T.'s accounts of the nature of the sexual assaults perpetrated by Boyd on her during the charged period of time. These actions included frequent "punishment" for her failing to do chores or finish homework and constant demands that she perform various sex acts with him. The punishments also consisted of physical abuse, denial of sleep, and one incident in particular involved strangulation where Boyd placed a plastic bag over A.T.'s head as well as forced her to engage in a sexual act. According to A.T., she suffered forced penetration (anal, vaginal, and/or oral) several times per week during the approximately 1-year period charged in the amended information. Many of these separate events are graphically described in the various interview reports contained in the presentence report. A.T. also described Boyd photographing or taking video of some of their sexual interactions.

In his statement given to the probation officer, Boyd admits that he had inappropriate sexual relations with A.T. and that he took sexual pictures of her. In his written statement he states that he has no excuse for what he did, but then proceeds to state that A.T. approached him about having a sexual relationship and that any sexual acts they participated in were consensual. He then asserts that A.T. later told him that she had lied to him about wanting a sexual relationship with him. He contends that in essence, she did so as part of a plan to break up his marriage to her mother.

The presentence report reveals that at the time of sentencing Boyd was 38 years old. He remained married to A.T.'s mother. Prior to his incarceration he was employed for a technology company and worked from his home. He is a high school graduate and served in the U.S. Air Force. He received an "other than honorable discharge" from the military which he attributed to being overweight and his ex-wife cheating on him. He does admit that the U.S. Air Force required him to attend anger management classes as the result of a domestic violence incident involving his ex-wife, an incident wherein he contends he was the victim of a slap. Since leaving the U.S. Air Force, he has mainly worked in information technology related work. Boyd's ex-wife was interviewed in relation to the investigation. She indicated that he was abusive to her during their marriage and forced her to participate in sexual relations against her will.

Boyd's criminal history includes mostly convictions for traffic offenses. He has one conviction for minor in possession and was convicted of failure to obey an order or regulation

while serving in the U.S. Air Force. He scored in the high risk range for recidivism overall on the LS/CMI. Dr. Theodore DeLaet completed an "Adult Psychosexual Report" on Boyd. He concluded that Boyd rated as a moderate risk to sexually reoffend. DeLaet noted that Boyd was a victim of abuse in his childhood which may have influenced Boyd's decision to use abusive strategies on his stepdaughter. He further noted that Boyd has struggled in interpersonal relationships in the past resulting in estrangement from his biological children. While DeLaet believed Boyd could be safely maintained and treated in the community with appropriate supervision, he did recommend that Boyd undergo sex-offender specific treatment whether in prison or in the community. He further opined that Boyd should be treated for depression and should not be involved in the parenting of other children.

The probation officer noted that Boyd denied that he had any need for treatment related to his sexual offending and lacks motivation for change. The probation officer stated that Boyd "engages in denial and minimization techniques, as evidenced by his description of the current offense. Although he accepts responsibility for his role in the offense, he appears to place blame on the victim as well, saying she wanted this and is 'manipulative. This is all a game to her.'"

Neither Boyd nor the State requested that the sentencing hearing be included in the bill of exceptions. Therefore our record does not include the arguments made, any allocution by Boyd, or the comments made by the court in rendering sentence. However, in its written order, the district court found there to be substantial and compelling reasons why Boyd could not be effectively and safely supervised in the community on probation. The court then recited that it had "considered [Boyd's] age, mentality, education and experience, social and cultural background, past criminal record or record of law-abiding conduct, the motivation for the offense, as well as the nature of the offense and the amount of violence involved in the commission of the crime." The court also noted that it had fully considered the information in the presentence report. On the charge of first degree sexual assault, the court imposed a sentence of not less than 40 nor more than 50 years in prison. On the charge of visual depiction of sexually explicit conduct, the court imposed a sentence of a mandatory minimum of 3 years but not more than 10 years in prison. The court ordered that the sentence on count II be served concurrently with the sentence on count I.

Boyd appeals.

ASSIGNMENTS OF ERROR

Boyd contends on appeal that the sentences imposed are excessive, that probation should have been imposed, and that his constitutional rights were violated due to the excessiveness of the sentence imposed. He also contends that his trial counsel was ineffective by recommending that he enter into the plea agreement as well as with respect to discovery and preparation of his case.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering

and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. See *State v. Burries*, 297 Neb. 367, 900 N.W.2d 483 (2017). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.* An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

ANALYSIS

EXCESSIVE SENTENCE

Boyd argues that the district court erred by failing to place him on probation and, instead, imposing an excessive prison sentence. Specifically, he argues that he did not score at a risk level that would justify the sentence imposed, given the results of DeLaet's evaluation and the sexually specific testing completed by the probation officer. He further argues that when compared to other sentences considered by the appellate courts of this state, the sentence imposed herein is not justified.

The State counters that Boyd has failed to provide the court with a sufficient record whereby the sentence imposed can be analyzed by failing to request that the sentencing hearing be included in the bill of exceptions. The State further argues that based on the written sentencing order and the presentence report, the district court appropriately considered the applicable sentencing factors in reaching its decision. While we agree with the State that our analysis of the sentence imposed is hampered by the absence of a record of the sentencing hearing, we note that Boyd does not assign or argue that the district court enunciated any particularly inappropriate factor at the sentencing hearing as a basis for the sentence ultimately imposed. As such, we find that while our analysis would have been aided by reviewing the record of the sentencing hearing, we cannot say that the State has been irreparably damaged given the generality of the arguments made by Boyd on appeal. We further note that the district court did list the information it had considered and gave a rationale for its decision in its written order. We also note that we have reviewed the presentence report which was relied upon by the district court in reaching its decision. As such, we find the record to be sufficient for our review.

When imposing a sentence, a sentencing judge should ordinarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

As charged by the State, first degree sexual assault is a Class II felony. See Neb. Rev. Stat. § 28-319(1) (Reissue 2016). A Class II felony is punishable by between 1 and 50 years in prison. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). Visual depiction of sexually explicit conduct is a Class ID felony when the person charged is 19 years of age or older. See Neb. Rev. Stat. §§ 28-1463.03(1) and 28-1463.04(2) (Reissue 2016). A Class ID felony is punishable by a mandatory minimum of 3 years in prison with a maximum sentence of 50 years in prison. § 28-105. Boyd's concurrent sentences of 40 to 50 years on count I and 3 to 10 years on count II are within the statutory limits. Accordingly, the district court acted within its discretion in imposing the sentences.

Because Boyd's sentences fall within the statutorily provided range, we review the sentences imposed only for an abuse of discretion. See *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013). First, we note that as to count II, the district court had no ability to impose probation. Count II carried a mandatory minimum sentence which excludes probation as a possibility. § 28-105(4). Had probation been given on count I, it only could have been imposed as a consecutive sentence to the sentence imposed on count II. But we can find no abuse of discretion in the sentences imposed by the district court.

We note initially that the circumstances of the offenses to which Boyd pled guilty were part of an ongoing practice of forcing A.T. to submit to the wishes and authority of her stepfather. According to the detailed statements of A.T., Boyd penetrated her orally, vaginally, and anally several times per week. Her statements, which are contained in the presentence report, graphically detail the settings and manner in which Boyd required her to perform sexually. On many occasions Boyd utilized sex as a punishment for A.T. not completing homework or household chores. He also utilized physical and mental abuse toward A.T. This abuse included the use of sleep deprivation and on one occasion, placing a plastic bag over A.T.'s head, cutting off her ability to breathe. Although Boyd's criminal history is brief, there was evidence in the record that Boyd was abusive toward his ex-wife and that this abuse included sexual abuse. Boyd was required to attend anger management classes while in the U.S. Air Force due to an incident involving domestic violence.

Also troubling is the lack of remorse and acceptance of responsibility demonstrated by Boyd. While voicing that he was wrong to have a sexual relationship with his stepdaughter, Boyd spends more time in his statement blaming her. He contends that she initiated the idea of a sexual relationship and that ultimately she tricked him into having a sexual relationship with her in an effort to break apart his marriage to her mother. While DeLaet did opine that Boyd could be treated in the community, the probation officer noted that Boyd denied that any treatment was necessary and that he was not motivated to make changes. Overall, Boyd scored in the high risk range to reoffend on the LS/CMI. On the record before us, we cannot find that the district court abused its discretion by denying probation or imposing an excessive sentence.

CONSTITUTIONALITY OF SENTENCE

Boyd next argues that the sentence imposed by the district court is so disproportionate to the crime committed that it constitutes cruel and unusual punishment under the Eighth Amendment. We disagree. The Nebraska Supreme Court has long held that "'[r]egardless of its

severity, a sentence of imprisonment which is within the limits of a valid statute ordinarily is not a cruel and unusual punishment in the constitutional sense.'" *State v. Loschen*, 221 Neb. 315, 320, 376 N.W.2d 792, 796 (1985) (quoting *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974)). Boyd acknowledges that the sentence imposed is within the statutory limitations. He nonetheless argues that the sentencing decision is not consistent with his health, age, lack of criminal history, his possibility of recidivism, and his ability for recidivism. All of these factors have been examined by the district court and reviewed by this court. We find no basis to find that Boyd's Eighth Amendment rights have been violated.

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Boyd is represented in this direct appeal by different counsel than the counsel who represented him at the trial level. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id.*

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*. See, also, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Within the context of cases involving the entry of guilty pleas, in order to meet the prejudice requirement, the appellant must show that there is a reasonable probability that, but for errors of counsel, he would not have pleaded guilty and would have insisted on going to trial. *State v. Beehn*, 303 Neb. 172, 927 N.W.2d 793 (2019).

In his brief on appeal, Boyd both assigns and argues that he received ineffective assistance of counsel in that trial counsel recommended that he accept the plea agreement. According to his brief, Boyd alleges that his counsel told him that he had problems with the case because of moral

issues. He alleges that due to those problems, he was never given the opportunity to see police reports or view the Project Harmony videos. He further alleges that trial counsel refused to meet with him on one occasion and when he did meet with him, did so for only a short period of time. He further notes that under the plea agreement, he pled to a more serious charge than what was in the original information.

We find that our record is sufficient to address Boyd's assertions and that those assertions are rebutted by the record. At the plea hearing, Boyd stated that he had sufficient time to speak with his attorney about the case, had told him everything he knew about the case and was satisfied with the representation he had received. He now attempts to recant those representations. However, as the Supreme Court has noted, a defendant cannot secure relief by recanting assurances made to the trial court during the sanctity of a full and formal court proceeding "'after the doors of the prison clang shut.'" *State v. Vanderpool*, 286 Neb. 111, 118, 835 N.W.2d 52, 58 (2013) (quoting *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988)).

We also find that the record refutes Boyd's claim that his counsel was ineffective in recommending that he plead guilty to count II of the amended information that was more serious than count II of the original information. While we acknowledge that plea agreements typically involve a reduction of charges, the reports of the Sarpy County Sheriff's Department contained in the presentence report demonstrate that the photographs and video of A.T. engaged in sexual activity with Boyd had not been discovered at the time Boyd was arrested and the initial criminal complaint was filed. At the time the plea agreement was entered, the State was in possession of visual evidence of Boyd engaging in and recording sexual activity involving himself and A.T. which had been discovered in his electronic devices. Moreover, the statements of A.T. demonstrated that Boyd had sexually assaulted her numerous times over an approximately 1-year period. Given the potential for the filing of many additional charges, we cannot say that trial counsel was ineffective in recommending that Boyd plead guilty to the two counts contained in the amended information.

For the sake of completeness, we note that Boyd contends in the body of his brief that trial counsel never discussed the contents of the presentence report with him. However, he does not assign this alleged failure as error. Conversely, Boyd assigns that counsel was ineffective with respect to discovery and preparation of the case, but does not argue that point outside of the context of recommending that Boyd accept the plea agreement. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019). Because Boyd has not assigned error to trial counsel's representation of him at the time of sentencing, nor has Boyd provided us with a record of the sentencing hearing, we do not consider Boyd's argument. We also do not consider Boyd's assignment of error with regard to discovery and preparation of the case in any context other than as it relates to recommending that the plea agreement be accepted.

CONCLUSION

We affirm Boyd's convictions and sentences. The sentences imposed by the district court did not constitute an abuse of discretion nor did they violate Boyd's constitutional rights. We further find that Boyd's claim of ineffective assistance of trial counsel that is both assigned and

argued is not supported by the record. Trial counsel was not ineffective by recommending that Boyd accept the plea agreement offered by the State.

AFFIRMED.